## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLENN J. DORSEY** | **CIVIL ACTION NO.: 11-231** |
| **VERSUS** | **JUDGE: JOHN J. BRADY** |
| **U.S. BANK NATIONAL ASSOCIATION AND PAYPAL, INC.** | **MAG. JUDGE CHRISTINE NOLAND** |

## OPPOSITION MEMORANDUM TO U.S. BANK NATIONAL ASSOCIATION'S MOTION TO DISMISS THE COMPLAINT FILED BY PLAINTIFF, GLENN J. DORSEY, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, Glenn J. Dorsey ("Dorsey"), respectfully files this opposition memorandum to the motion to dismiss/motion for summary judgment (Rec. Doc. No. 21) filed herein by defendant, U.S. Bank National Association ("US Bank"). For the reasons that follow, US Bank's motion is unfounded and should be summarily dismissed at this very early, pleading stage of this litigation.

## INTRODUCTION

After being recognized as one of the most highly recognized and successful defensive football players in LSU's long and storied history, Dorsey opened a bank account with US bank and relied upon defendants, *inter alia*, to protect his money deposited in US Bank from unauthorized withdrawals. From August 2009 through October 2010, however, almost $2 million was withdrawn from Dorsey's US Bank account using PayPal—all without plaintiff's authority. In response to Dorsey's pre-suit complaints, US Bank ultimately refused to take any responsibility for these unauthorized transactions. And now, in response to Dorsey's original Complaint filed herein, and before any party has engaged in any discovery whatsoever, US Bank

suggests to this Court that all of Dorsey's federal and state law claims should be dismissed as a matter of law.

According to defendant's motion to dismiss, this Court can determine that "US Bank is not liable to Mr. Dorsey" according to a simple reading of "the four corners" of plaintiff's Complaint and before the first bit of discovery has been conducted.  In an attempt to avoid discovery completely, US Bank suggests to this Court that Dorsey's claims do not have even a "plausible" legal basis.  Of course, US Bank's reading of plaintiff's Complaint is self-serving and overly simplistic.  In short, plaintiff has asserted several recognized and viable causes of action against US Bank:   Violation of the EFTA; negligence; conversion; and unjust enrichment.[1] And many, many questions regarding numerous issues of material facts involved in these claims remain unanswered, including:  What was the nature of US Bank's non-contractual relationship with Dorsey (i.e.: What, if anything, did US Bank promise to Dorsey to get his significant business back in 2008 and beyond?); Who actually received the money that was taken from Dorsey's account without authority?; What type of security measures were taken by US Bank to safeguard against these types of unauthorized transactions?; To whom and how did US Bank provide notice of these numerous, unauthorized transactions?; What law (federal and/or which state's law) should apply to determine these claims?).  Rather than acknowledge these unanswered questions that surround the current dispute involving a well-known, professional football player and some $2 million, US Banks hopes to dismiss Dorsey's Complaint without answering any of the same.

---

[1]   Additionally, no scheduling order has been entered in this matter, and no deadline to amend plaintiff's initial Complaint has been set.  At this point in time, before any Rule 26 disclosures have been made and before any discovery has been exchanged, based solely upon the materials produced by and attached to US Bank's motion, plaintiff anticipates supplementing his original complaint and amending the same to assert additional causes of action, including but not limited to a breach of contract claim.

## LAW AND ARGUMENT

Because US Bank has urged its motion to dismiss pursuant to both Rule 12(b)(6) and Rule 56, it is necessary to discuss the relevant legal standards that apply to both of these rules.

## STANDARD OF REVIEW

### Standard Regarding Defendant's Rule 12(b)(6) Motion

As is well-known to this court, in addressing US Bank's motion to dismiss pursuant to Rule 56(b)(6), the court must construe plaintiff's allegations in the light most favorable to him and draw all reasonable inferences in his favor. *See Kaltenbach v. Richards, 464* F.3d 524, 526-27 (5th Cir: 2006); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The Supreme Court has explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). A complaint need not contain detailed factual allegations, but it must provide more than "a formulaic recitation of a cause of action's elements" supported by merely conclusory statements. *Twombly*, 550 U.S. at 555. Even after *Twombly*, the federal notice-pleading standard requires that a plaintiff provide "only 'enough detail [in his complaint] to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through [his] allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Reger*, 592 F.2d at 764 (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).  No claim may be dismissed merely because the trial judge disbelieves the allegations or feels that recovery is remote or unlikely.  *See Bell Atlantic Corp, supra*; *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, 122 S. Ct. 992, 152 L. Ed. 2d *(2002)*.

Because a motion to dismiss tests the adequacy of a pleading, generally no materials beyond the contested pleading itself may be examined in ruling upon the motion. Parties are free to include extrinsic materials with their motion to dismiss, but doing so will alter the nature of the motion. The court enjoys the discretion to consider or exclude such materials. Here, by including two Affidavits of US Bank representatives and a number of previously unproduced documents, US Bank invites this court to consider these extrinsic materials and convert its motion into a Rule 56 motion for summary judgment. If the court chooses to consider these materials, it must generally convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. This conversion requirement ensures that the distinct policies undergirding Rule 12(b)(6) (testing the formal sufficiency of the pleading) and Rule 56 (testing the availability of facts to support the claim) are respected.

In the event that a Rule 12(b)(6) motion is converted to a Rule 56 motion, the court must give all parties notice of such a conversion, and provide them with an opportunity both to be heard and to present further materials in support of their positions on the motion. As a general rule, in the event of conversion, the court is likely to permit the parties to engage in appropriate discovery before ruling on the converted motion. In any event, and in an abundance of caution, if this court chooses to convert US Bank's Rule 12(b)(6) motion into a Rule 56 motion, plaintiff respectfully requests both notice of this conversion and additional time to compile and present evidence in opposition to the same before any hearing is set or determination made.

**Standard Regarding Defendant's Rule 56 Motion for Summary Judgment**

If this court decides to consider the extrinsic materials submitted by US Bank in support of its Rule 12(b)(6) motion to dismiss and covert the same into a Rule 56 motion, after notice and additional time to respond, plaintiff respectfully requests that defendant's Rule 56 motion be

summarily denied as numerous issues of material fact remain contested. Summary judgment should be rendered only when, <u>after an adequate period for discovery</u>, a party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial, so long as judgment against that party is appropriate as a matter of law.

It is a well-established principle that summary judgment is only properly entered after an adequate time for discovery. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed. 2d 265 (1986). When, as here, a summary judgment motion is filed very early in the litigation, before a realistic opportunity for discovery, summary judgment should be refused as a matter of course, with exceptions permitted in only rare cases. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986). For this reason alone, plaintiff respectfully requests that if this court considers US Bank's Rule 56 motion at all, that it deny the same summarily.

### Motion for Rule 56(d) Protection

In an abundance of caution, plaintiff now invokes the protection of Rule 56(d) and formally moves this court to deny or otherwise postpone defendant's Rule 56 motion until after sufficient discovery has been conducted. Rule 56(d) serves as the "safety value" designed to abate a hasty swing of the "summary judgment axe." *See Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 10-11 (1st Cir. 2007). Pursuant to Rule 56(d), attached hereto as Exhibit 2 is the Declaration of undersigned counsel regarding the status of discovery and need for additional discovery efforts. With such early filed motions, the courts generally recognize that the Rule 56(d) declarant may not be capable of framing its postponement request with great specificity.

Whether to grant or deny a Rule 56(d) postponement is committed to the district court's discretion. Ordinarily, such requests are construed and granted liberally; and to deny a properly

made and supported motion is "disfavored." *See Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 46 (1st Cir. 1999).  If the court is presented with a Rule 56(d) motion, it may not proceed to decide the summary judgment motion without first considering and ruling upon the Rule 56(d) request.

### Genuine Issues of Material Fact Clearly Remain Contested

Even if this court converts defendant's Rule 12(b)(6) motion into a Rule 56 motion and does not allow plaintiff to conduct any discovery before ruling upon the same, it is apparent that numerous genuine issues of material fact remain contested that preclude summary disposition at this very early stage of the litigation.

Attached hereto as Exhibit 1 is the Declaration of Mike Rowan, Glenn Dorsey's business manager at all material times and one of the designated agents regarding Dorsey's account with US Bank.  Attached as Exhibit A to Rowan's Declaration are a number of emails to and from US Bank dated from September 24, 2010, through November 22, 2010 (Rowan – 000001 to 000009).  Although US Bank represents to this court that all issues of notice and causation for EFTA and state law claims are undisputed and essentially uncontested, this is simply not accurate.  For example, US Bank representative Thomas Wesley Floyd states unequivocally in his sworn affidavit filed herein that "Mr. Dorsey and his agents failed to notify U.S. Bank whatsoever of any unauthorized transactions by PayPal on the Dorsey Account until on or about October 27, 2010." (Exhibit A to US Bank's motion, Floyd Affidavit, p. 4).  This is inaccurate and is directly contradicted by the sworn Declaration of Mike Rowan who states unequivocally that he personally informed US Bank of the unauthorized withdrawals "prior to September 24, 2010." (Exhibit 1, p.1).  Clearly the issues of notice and causation (i.e., what effect, if any, giving

notice to defendant had on its ability to stop unauthorized transactions) are rife with unresolved issues of fact that demand further inquiry.

Indeed, the emails attached to Mike Rowan's Declaration paint a completely different picture of this case than that depicted in US Bank's motion and raises a number of material—and concerning—issues:

- September 24, 2010 email from Mike Rowan to Thomas Wesley Floyd: "Any updates Wess on Glenn and the fraudulent pay pal transactions" (Rowan–000001);

- September 22, 2010—$96,000 withdrawn without authorization; September 30, 2010—$86,000 withdrawn without authorization; October 8, 2010—$89,000 withdrawn without authorization; October 12, 2010—$43,000 withdrawn without authorization; October 18, 2010—$43,000 withdrawn without authorization (Exhibit C to Floyd's Affidavit, p. 3);

- October 21, 2010 email from Mike Rowan to Thomas Wesley Floyd: "Wess, where does USB's investigation stand as far as Glenn Dorsey and the unauthorized charges against his account from Pay Pal.  Please let me know a status report when you can." (Rowan—000002);

- October 26, 2010—$17,800 withdrawn without authorization.(Exhibit C to Floyd's Affidavit, p. 3);

- October 27, 2010 email from Thomas Wesley Floyd to Mike Rowan: "I had a hold on it . . . but wires kept getting sent out of it.  I think the wire room took it off.  I can move all the money to his checking and put another hold on the account … just let me know if you want me to."  (Rowan—000004);

- October 27, 2010 email from Thomas Wesley Floyd to Mike Rowan: "Funds have been moved . . . inform Lisa and Adrian that no wires can be sent out of Glenn's Money Market." (Rowan—000005);

- November 22, 2010 email from Adrian Lacks to Mike Rowan: "USB says they will put $824,800 back in Glenn's acct ending in 4873. Until the situation is resolved." (Rowan—000009).

These emails reveal a bank that was clearly delinquent in its duty to plaintiff—whether judged by the standards of EFTA or any applicable state law. And, instead of refunding Dorsey some $824,800 as indicated in the last email of November 22, 2010, US Bank has ultimately chosen to give Dorsey nothing and is now attempting to have all of his claims dismissed before US Bank is required to explain their involvement in this fraud. Obviously, US Bank is not entitled to summary judgment.

### Choice of Law Issues Preclude Dismissal

As a preliminary matter, in order to analyze the appropriate standard of care expected of both US Bank and PayPal, Inc. in this case, it will be necessary to determine which state or states' laws apply. Given the various domiciles and relevant contacts involved here, this determination will be very fact intensive; and, more importantly for immediate purposes, many of the key facts that are involved in any such conflicts analysis are currently unknown and will only be discovered after sufficient discovery.[2] For instance, Dorsey may be considered a domiciliary of either Louisiana, Missouri, or some other state, at the time of the relevant,

---

[2] Although plaintiff pled in his original Complaint (Rec. Doc. No. 1) that this was a civil action to be decided according to the EFTA and "the laws of the State of Louisiana," this preliminary and somewhat perfunctory allegation is not—or at least should not be—binding upon plaintiff, defendants, and this Court. This specific allegation was made when plaintiff was represented by other, former counsel; and it is the present intent of plaintiff's current counsel, when appropriate, to seek to amend plaintiff's original complaint to reallege the appropriate domiciles of the parties and other facts that are relevant to the choice of law issue once these facts are learned through discovery.

unauthorized transactions; the unknown thief may have been located almost anywhere in the world; where exactly was the US Bank account "located" for conflict purposes—Ohio, Louisiana, Missouri, or some other state; where was PayPal—California or elsewhere; who were the principal representatives involved in these transactions, and where were they located at material times; and, in general, depending upon all of these factual determinations, which state's "policies would be most seriously impaired if its law were not applied to that issue." La.C.C. art. 3515, *et. seq.*   And without the present ability to conduct an appropriate conflict of laws analysis to determine the applicable law (because there has been no discovery conducted to date), it is impossible for this court to evaluate—much less dismiss—any of plaintiff's state law claims at this stage of the suit.   For this reason alone, US Bank's motion to dismiss, whether considered under Rule 12(b)(6) or Rule 56, should be denied.

## US BANK'S RULE 12(b)(6) MOTION SHOULD BE DENIED

US Bank does not argue that plaintiff failed to allege sufficient facts to state a claim pursuant to the Electronic Funds Transfer Act, 15 U.S.C. 1693, *et seq.* and Regulation E, 12 CFR 205, *et seq.* ("EFTA"); instead, US Bank argues that plaintiff does not have an EFTA claim because (a) he did not notify US Bank timely and his untimely notice prevented US Bank from acting to protect his interests; and (b) because plaintiff's EFTA claim is prescribed.   US Bank's position is without merit.

## UNRESOLVED ISSUES REGARDING EFTA'S SIXTY DAY NOTICE

Under 15 U.S.C. 1693g(a) and 15 U.S.C. 1693g(e), if there is an unauthorized electronic transfer from a customer's bank account, the customer's liability is capped at $50 maximum. Any loss in excess of $50 must be borne by the bank.   Under 15 U.S.C. 1693g and 1693f, the

bank is required to credit the customer's account with any amount taken through an unauthorized transfer.

The bank's liability under 15 U.S.C. 1693g and 1693f is no fault strict liability.  The bank is liable for the unauthorized transfers, even if the bank proves that it carefully complied with all applicable statutes and regulations and exercised the highest degree of care to guard the customer's account.

However, the bank does have one affirmative defense.  Under 15 U.S.C. 1693g(a) and 15 U.S.C. 1693g(b), the customer must notify the bank within sixty days after receiving written notice of an unauthorized transfer (a bank statement which reflects the fact of the unauthorized transfer is generally viewed as written notice) and if the customer fails to provide notice, then the customer, not the bank, must bear any loss which resulted from the failure to provide notice— UNLESS there are extenuating circumstances which excuse the customer's failure to provide notice.  The exact statutory language is as follows:

(a)  .  .  .   Notwithstanding the foregoing, reimbursement need not be made to the consumer for losses the financial institution establishes would not have occurred but for the failure of the consumer to report within sixty days of transmittal of the statement (**or in extenuating circumstances** such as extended travel or hospitalization, within a reasonable time under the circumstances) any unauthorized electronic fund transfer or account error which appears on the periodic statement provided to the consumer.

(b)  Burden of proof

In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) of this section have been met, and, if the transfer was initiated after the effective date of section 1693c of this title, that the disclosures required to be made to the consumer under section 1693c(a)(1) and (2) of this title were in fact made in accordance with such section.

(emphasis added).  In Mr. Dorsey's case, the first unauthorized transfers occurred in August 2009 and appeared on the bank statement sent to Mr. Dorsey in late August 2009.  The bank argues, therefore, that Mr. Dorsey was obligated to report the unauthorized transfers no later than late October 2009 and, because Mr. Dorsey did not report within that sixty day time period, therefore Mr. Dorsey, as a matter of law, cannot recover for any unauthorized transfer occurring after late October 2009.

The problem with US Bank's argument is that it ignores critical portions of the statute. To begin with, Mr. Dorsey is not obligated to report the unauthorized transfer within sixty days if there are extenuating circumstances for his failure to report.  Plaintiff respectfully submits that there are extenuating circumstances which delayed Mr. Dorsey's obligation to report by several months at least.[3]  The bank, having the burden of proof, has not presented this Honorable Court with any basis for concluding that extenuating circumstances are absent.  This is yet another factual issue that cannot and should not be resolved at this early, pleadings stage of this proceeding.

In addition, there is a fact issue regarding causation.  In order to limit its losses, the bank must prove that if a loss had been reported sooner, then subsequent losses would have been prevented.  In our case, the unauthorized transfers occurred over a fourteen month period and Mr. Dorsey expects the evidence to show that he reported the fact of unauthorized transfers to the bank during the twelfth month, yet the bank permitted the unauthorized transfers to continue for another two months until Mr. Dorsey finally took action himself by closing the account.  Thus, there will be a fact issue as to whether Mr. Dorsey's failure to report sooner was a cause of the losses.  Indeed, as evidence by the attached Declaration of Mike Rowan and Exhibit A to the

---

[3] Travel is specifically mentioned as an extenuating circumstance.  In August 2009, the first bank statement showing an unauthorized transfer was mailed to Mr. Dorsey's home address in Lee Summit,  Missouri.  In August 2009, Mr. Dorsey was attending the Kansas City Chiefs' month long pre-season training camp in River Falls, Wisconsin.

same, that unauthorized withdrawals were occurring was reported some time prior to September 24, 2010—not October 27, 2010, as US Bank represents to this Court.  Some additional $275,000 was withdrawn from plaintiff's account between September 24th and October 27th, and more than $900,000 was withdrawn between July 24th and the day US Bank finally blocked his account.  Clearly factual issues remain that preclude either a Rule 12 or Rule 56 disposition.

Finally, there is some ambiguity in the sixty-day provision of the statute.  The bank's position is that a customer can recover only unauthorized transfers that occurred prior to the sixtieth day after the customer should have reported the fact that an unauthorized transfer has occurred.  The bank calculates the "should have" date as late October 2009 and believes that approximately $100,000 of unauthorized losses are recoverable, because this is the amount taken between August 2009 and late October 2009.  Plaintiff believes that there are extenuating circumstances and the "should have" date is considerably later than October 2009.  Additionally or alternatively, plaintiff believes that the sixty day period starts each time a new bank statement is mailed.  In this case, plaintiff expects the evidence to show that he reported the losses no later than September 2010, so the sixty day period encompasses the losses from July 2010 forward, an amount in excess of $900,000.

There is almost no jurisprudence on this point.  The few cases that have been reported support defendant's position, but these cases also show why a court that accepts defendant's position will often reach an extraordinarily harsh result.  The facts of *Kruser v. Bank of America*, 230 Cal.App. 3rd 741 (Cal. App. 1991), on which the defense relies heavily, illustrate this point.  The plaintiffs were husband and wife sharing a joint account.  A thief stole one of their debit cards and used it to make a $20 withdrawal which the plaintiffs failed to notice.  Three months later, the thief made a withdrawal in excess of $9,000.  The bank argued that, because the

plaintiffs failed to notice and report the $20 withdrawal, therefore the plaintiffs must bear the loss of their $9,000. Yet even an alert customer, sharing a joint account with a spouse, could fail to recognize that a $20 ATM withdrawal was unauthorized. And Mr. and Mrs. Kruser offered evidence which many courts would treat as extenuating circumstances, including evidence of serious illness leading to hospitalization. This result is cruelly unfair and, given that the purpose of EFTA is to protect consumers, this result contradicts the statutory purpose of this remedial statute. For these reasons, plaintiff respectfully suggests this Honorable Court should hold that a new sixty day period under 15 U.S.C. 1693g starts with each new bank statement, thereby allowing, at the least, Dorsey to look back and recover his stolen money for the sixty day period preceding his giving notice to US Bank. And again, the determination regarding when US Bank first received notice from plaintiff is clearly contested here.

## PLATIFF'S EFTA CLAIMS ARE NOT PRESCRIPTION

EFTA contains a one year statute of limitations, 15 U.S.C. 1693m(g). The bank argues that any claim Mr. Dorsey could otherwise pursue under EFTA is barred by this one year statute of limitations (bank's memorandum pages 15-17). The bank's arguments are without merit for any or all of several reasons.

**1. Claims arising out of unauthorized transfers are governed by 15 U.S.C. 1693g and 15 U.S.C. 1693 f, not by 15 U.S.C. 1693m.**

EFTA contains three provisions which must be examined in order to determine what limitation period applies to Mr. Dorsey's claim. The EFTA one year limitation period, 15 U.S.C. 1693m(g), applies only to claims governed by 15 U.S.C. 1693m and does not apply to claims arising out of unauthorized transfers.

The first relevant provision, 15 U.S.C. 1693g, allocates responsibility for losses resulting from unauthorized transfers: certain losses are to be borne by the consumer, the remaining losses

are to be borne by the bank.  Viewed from the bank's perspective, this statute imposes no-fault liability.  In sum, the bank is liable for ALL unauthorized transfers from a customer's account, whether the bank was at fault or not.  Even if the bank proves that it scrupulously complied with every applicable statute and regulation and exercised the highest degree of care to protect the customer's account from unauthorized transfers, the bank remains liable for the losses identified in the statute.  The only way the bank can reduce its liability is by proving an affirmative defense which has the following elements:  (i) the customer failed to provide timely notice of the losses and (ii) there were no extenuating circumstances to explain the customer's failure to provide timely notice.

The second relevant statutory provision, 15 U.S.C. 1693f, prescribes the procedures that are to be followed when an "error," including an unauthorized transfer, takes place.  In sum, the bank must investigate customer reports of errors, including unauthorized transfers, and must correct any error by crediting the amount of the error—including the portion of any unauthorized transfer for which the bank is legally responsible under 15 U.S.C. 1693g—back to the customer's account.

The third relevant statutory provision, 15 USC 1693m, contains seven subsections.  The subsections of interest here are (a) and (g), which provide, in pertinent part, as follows:

> (a) **(a) Individual or class action for damages; amount of award** Except  as  otherwise provided by this section and section 1693h of this title, any person who  fails  to  comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of–
>
> *(provisions which govern calculation of damages omitted as irrelevant)*
>
> **(g) Jurisdiction of courts; time for maintenance of action**
> Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

The few courts that have addressed the issue have assumed, without analysis, that the one year period set forth in 1693m subsection (g) applies to claims arising out of unauthorized transfers. *See, e.g., Springer v. Wachovia Bank, N.A.,* 6:09:628 (M.D. Fla. 2010), 2010 WL 427417.

However, a careful reading of the statutory provisions quoted above will show that this conclusion is highly debatable. To begin with, 15 U.S.C. 1693m(a) begins by stating that 15 U.S.C. 1693m is intended to provide the measure of damages when a bank "fails to comply with any provision of this subchapter." But the bank's liability for unauthorized transfer under 15 U.S.C. 1693g is, as pointed out above, strict liability which exists irrespective of whether the bank complied, or failed to comply, with any provision of the subchapter. Thus, the reference to non-compliance suggests that 15 U.S.C. 1693m is inapplicable to disputes arising from unauthorized transfers. Reading further, 1693m(a) states that the method of calculating damages set forth in 1693m does not apply to "an error resolved in accordance with section 1693f of this title." Section 1693f is, as noted above, one of the two sections which impose liability on banks for unauthorized transfers and, more specifically, 1693f is the subsection which requires a bank to investigate unauthorized transfers and re-credit a customer's account with the amount of any unauthorized transfer.

These points become easier to see if subsection (a) is viewed with the key sections marked in boldface:

> Except as otherwise provided by this section and section 1693h of this title, **any person who fails to comply with any provision of this subchapter** with respect to any consumer, **except for an error resolved in accordance with section 1693f** of this title, is liable to such consumer in an amount equal to the sum of–

To summarize, it appears from the language of 15 U.S.C. 1693m(a) that 15 U.S.C. 1693m does NOT apply to claims for unauthorized transfers, because these claims do not arise from "failure to comply with provisions of the subchapter" and because these claims are viewed as "errors"

and are resolved pursuant to 15 U.S.C. 1693f, by re-crediting the customer's account and not by an award of damages calculated under 1693m.[4]

So, does the one year limitation period of 15 U.S.C. 1693m(g) apply only to claims brought under 15 U.S.C. 1693m, or does this one year limitation period also apply to claims brought to enforce the customer's rights under 15 U.S.C. 1693f and 1693g?  The clear language of 15 U.S.C. 1693m(g) is that the one year limitation period  applies only to claims  brought "under this section" and the phrase "this section" evidently means "section 1693m."

The net effect of all this is as follows.  It appears that two kinds of claims may be brought under the EFTA subchapter:

> Claims arising from unauthorized transfers, which are governed by 1693f and 1693g. These are strict liability no fault claims and the customer may recover irrespective of whether the bank has violated any provision of the subchapter,

> Claims arising from 1693m, which imposes liability when the bank has violated a provision of the subchapter.

It further appears that the one-year limitation of 15 U.S.C. 1693m applies ONLY to claims for arising under 1693m, not to claims for unauthorized transfer arising under 1693f and 1693g.

So when the bank argues that plaintiff's EFTA claims for unauthorized transfer are barred under the limitation period of 15 U.S.C. 1693m(g), it appears that the bank is citing a limitation period which is inapplicable.

In this case, what limitations period does apply? 15 U.S.C. 1693g and 15 U.S.C. 1693f, which govern liability for unauthorized transfers, do not contain any limitation period.  Plaintiff respectfully suggests that the appropriate limitation period would be supplied by state law, under

---

[4] A review of 15 U.S.C. 1693f, which defines an unauthorized transfer as an "error" and prescribes the steps a bank must take to rectify "errors",  will show that this statutory provision contains a subsection (e) which cross-references 1693m.  Does this cross-referencing imply that a claim for re-credit of an unauthorized transfer under 1693f is also a claim under 1693m?  The short answer is, not as far as plaintiff can tell.  Subsection (e) simply indicates that, if the error resolution process is not followed in connection with an unauthorized transfer, then failure to follow the error resolution process is a violation of the subchapter actionable under 1693m.

an analysis similar to the one by which courts have adopted the analogous state limitation periods for constitutional claims asserted under 42 U.S.C. 1983.

In sum, it appears that it will be necessary to resolve the choice of law issue in order to determine what limitation period applies to plaintiff's limitation claims.  In this context, plaintiff would note that Missouri applies a five year limitation period to both tort and contract claims. Mo.Stat. 516.120; *Robinson v. Health Midwest Development Group*, 58 S.W.3d 519 (Mo. 2001).

> **2.  Assuming the one year limitation period of 15 U.S.C. 1693m(g) applies, this one year period is subject to the discovery rule and equitable tolling and therefore it is not possible to determine, from the present record, whether suit was filed within the limitation period or not.**

Courts that have addressed the issue have concluded that the one year period of 15 U.S.C. 1693m(g) is subject to the discovery rule and equitable tolling.  *O'Donnell v. Wachovia Bank*, 09-61885 (S.D. Fla. 4/7/10),  2010 WL 1416986 *(*held: EFTA one year limitation period did not run because it was equitably tolled, plaintiff's EFTA claim timely filed);  *Peters v. Riggs National Bank*, N.A., 942 A.2d 1163 (D.C. App. 2008) (held: discovery rule does not toll running of statute of repose which is applicable to state claims, dictum: discovery rule does apply to  EFTA claims).

> **3.  Assuming the one year limitation period of 15 U.S.C. 1693m(g) applies, nevertheless for claims arising out of the error resolution process, the one year limitation period does not begin to run until the conclusion of the error resolution process.**

A claimant under EFTA can complain of both the initial wrongful act (e.g., unauthorized transfer) and failure to properly carry out the error resolution process.  The limitation period for complaints concerning the error resolution process does not begin to run until the error resolution process is complete, so, even if the one year period for complaining of the initial wrongful act has expired, the plaintiff may still retain the right to complain of  failure to properly carry out the error resolution process.  *See Berenson v. National Financial Services, LLC*, 403 F.Supp.2d 133

(D. Mass. 2005) (where there are multiple EFTA violations, there is a different one year period for each violation and the one year period for error resolution violations doesn't begin to run until the conclusion of the error resolution proceedings).   In our case, the error resolution proceedings took place during a time frame beginning in September 2010 and ending in January 2011, so the suit was timely filed insofar as complaints relating to the error resolution proceedings are concerned.

## PLAINTIFF'S STATE LAW CLAIMS ARE NOT PREEMPTED BY EFTA

Plaintiff has asserted state law claims including claims for negligence, conversion, and unjust enrichment.   The bank asserts that these claims are preempted by EFTA.   This argument is without merit for the following reasons.

When the U.S. Congress enacted EFTA, Congress began by specifically declaring that the primary purpose of EFTA is to protect consumers (15 U.S.C. 1693):

**(b) Purposes**
It is the purpose of this subchapter to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. **The primary objective of this subchapter, however, is the provision of individual consumer rights.** *(emphasis added)*

Consistent with this purpose, Congress expressly addressed the issue of preemption by declaring that the only state laws preempted by EFTA are state laws that are inconsistent with EFTA. Congress added that state laws are not to be deemed inconsistent if the state law affords consumer protections which are more generous than the protections available under EFTA (15 U.S.C. 1693q):

This subchapter does not annul, alter, or affect the laws of any State relating to electronic fund transfers, dormancy fees, inactivity charges or fees, service fees, or expiration dates of gift certificates, store gift cards, or general-use prepaid cards, except to the extent that those laws are

inconsistent with the provisions of this subchapter, and then only to the extent of the inconsistency. **A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection afforded by this subchapter.** *(emphasis added)*

Consistent with the statutes quoted above, courts that have been asked to address preemption arguments under EFTA have concluded that EFTA does not preempt state tort and contract law. *Stegall v. People's Bank of Cuba*, 270 S.W.3d 500 (Mo. App. S.D. 2008) (EFTA does not preempt state law claim for breach of contract); *Geimer v. Bank of America, N.A.,* 784 F.Supp.2d 926 (N.D. Ill. 2011) (customer alleges that bank failed to prevent unauthorized transfers of funds from her account; held: EFTA does not preempt state law claims for negligence, breach of fiduciary duty, and breach of contract). *See also Bernhard v. Whitney National Bank, 523 F.3d 546* (5th Cir. 2008) (held: EFTA does not create field preemption); *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F.Supp.2d 578 (E.D. Pa. 2004), in which the court found that certain sections of the UCC were preempted because inconsistent with EFTA, but noted that most state law remedies are not preempted, stating:

> The EFTA has an anti-preemption clause specifically allowing states to enforce consumer credit protections that go beyond the protections of the EFTA that are not inconsistent with EFTA.

In view of the above authority, it would seem clear that state claims for tort and breach of contract are not preempted by EFTA. To quote *Hospicomm, supra*, 15 U.S.C. 1693q, properly interpreted, is "**an anti-pre-emption clause**."

What, then, is the basis for defendant's preemption argument? Defendant seizes on footnote 7 in the 5th Circuit's *Bernhard* decision, *supra* and quotes this footnote as the basis for a contention that plaintiff's state law claims are preempted by EFTA. Defendant has clearly taken

this footnote out of context.  The issue in *Bernhard* was whether there was removal jurisdiction. After careful analysis, the Fifth Circuit reached two conclusions: (1) there is no field preemption under EFTA, therefore, there can be no removal jurisdiction based on the doctrine of field preemption;[5] (2) the mere fact that plaintiffs requested attorney fees was not enough to transform their state law complaint into an EFTA complaint and, thus, under the well-pleaded complaint doctrine, there was no "arising under" jurisdiction.  Since there was no federal jurisdiction, the case must be remanded back to state court and all remaining issues must be decided by the state court.  To avoid any possible confusion, the Fifth Circuit, in footnote 7 at the conclusion of its opinion, listed the issues which the Fifth Circuit felt were not properly before the federal court due to lack of jurisdiction and which, therefore, remained unresolved to be addressed by the state court after remand.  These issues included whether the general duty of due care of La.Civ.Code 2315 would give rise to a negligence cause of action against a bank that failed to protect its customer account from unauthorized transfers; and whether there would be conflict preemption if such a duty were found to exist.

In sum, footnote 7 does not stand for the proposition that there is (or is not) a Louisiana state law negligence cause of action under La.Civ.Pro. 2315, and footnote 7 does not stand for the proposition that EFTA has preempted a cause of action for negligence that would otherwise exist.  Footnote 7 stands for the proposition that, due to lack of federal jurisdiction, the U.S. Fifth Circuit did not have jurisdiction to address or decide these issues. In sum, *Bernhard* footnote 7

---

[5]   The difference between field preemption and conflict preemption and the significance of this distinction for purposes of removal jurisdiction is summarized in *Monroe v. Cessna Airdraft Company*, 417 F.Supp.2d 824 (E.D. Tex 2006) (express, preemption, conflict preemption, field preemption);  *Virgil v. Reorganized M.W. Co., Inc.*, 156 F.Supp.2d 624 (S.D. Miss. 2001) (conflict preemption, field preemption).  In sum, where there is field preemption, federal jurisdiction exists and the case may be removed; where there is conflict preemption, there is no federal jurisdiction and the case may not be removed.

does not supply authority for any legal position, favorable or unfavorable, which has any relevance to our case.

Once defendant's *Bernhard* argument is disposed of, defendant is left to argue preemption based on the language of 15 U.S.C. 1693q.  More specifically, since *Bernhard* stands squarely for the proposition that EFTA does not create field preemption, therefore defendant is left to argue that EFTA creates  express and/or conflict preemption, two issues which were not addressed or decided in *Bernhard*.  The defense argument relating to express or conflict preemption argument may be summed up as follows:

(1) Under 15 U.S.C. 1693q, EFTA <u>does not</u> preempt "the laws of any state relating to electronic fund transfers."

(2) Therefore, by negative implication, EFTA <u>does</u> preempt all state laws <u>other than</u> laws relating to electronic fund transfers;

(3) La.Civ.Code 2315, which imposes a duty of due care on a wide range of persons in a wide range of situations, is not a state law relating to electronic fund transfers, because it relates to matters other than electronic fund transfers.

(4) Therefore, La.Civ.Code 2315 is preempted by EFTA.

Once the defense argument is clearly articulated, the flaws in the argument are self evident.  In the first place, defendant's attempt to create preemption by negative implication—in the absence of affirmative statutory authority—is dubious because federal courts are reluctant to find preemption.  *Trinidad v. American Airlines, Inc.*, 932 F.Supp. 521 (S.D. N.Y. 1996) ("there is a presumption against preemption").  In the second place, defendant's attempt to create preemption by negative implication is contrary to the stated purpose of EFTA since, as pointed out at the beginning of this section, Congress's intent in enacting EFTA was to give greater remedies to consumers and construing 1693q to eliminate most state remedies by negative implication is contrary to this intent.  In the third place, defendant's determination to interpret La.Civ.Code

2315 as not "relating to electronic fund transfers" because it relates to matters other than electronic fund transfers is nonsensical.[6]  For all these reasons, defendant's preemption argument is without merit.

**PLAINTIFF'S STATE LAW CLAIMS:**
**NEGLIGENCE, CONVERSION, & UNJUST ENRICHMENT**

As discussed above, without sufficient factual discovery to determine which state's laws will apply herein to determine plaintiff's state law claims against defendants, it is premature—if not simply impossible—to analyze the merits of the same.  In short, US Bank asks this court to determine the merits of plaintiff's claims without first being able to inform it of the applicable law.  Under the circumstances, plaintiff respectfully suggests that it would be improper to "guess" at the applicable law against which to judge plaintiff's claims.  Moreover, given the nature and scope of the allegations of negligence, conversion, and unjust enrichment found in plaintiff's Complaint (Rec. Doc. No. 1), as a general proposition, clearly plaintiff has sufficiently alleged facts to state a garden variety tort suit against US Bank; i.e., US Bank owed its customer a general duty of reasonable care, breached the same in particular ways (see paragraphs 30-35 of plaintiff's Complaint), and thereby caused plaintiff damages.  To the extent that US Bank benefitted from its negligence—either in whole or in part—US Bank converted the funds of Dorsey without authority.  And to the extent that US Bank benefitted from its negligence to the detriment of plaintiff—and the law fails to give plaintiff another viable remedy—plaintiff has specifically and appropriately pled an equitable, unjust enrichment claim.  There is simply no

---

[6] If Mary has three brothers - Joe, Jim, and Sam - then Mary is equally related to all three of them. Similarly, if La.Civ.Code 2315 requires all persons to exercise due care in their dealing with others, and if this duty of due care is imposed simultaneously on banks that handle electronic fund transfers, drivers that operate cars, and teachers that supervise students, then La.Civ.Code 2315 "relates to" electronic fund transfers, operation of motor vehicles, AND teaching.  The fact that it relates to ALL these categories does not mean that it fails to relate to any one of them.

compelling reason to dismiss any of plaintiff's claims at this time, and defendant's motion should be dismissed in its entirety.

## CONCULSION

For all of the foregoing reasons, US Bank's motion, whether considered pursuant to Rule 12(b)(6) or Rule 56, should be denied.

Respectfully submitted,


s/ J. E. Cullens, Jr.                                                 .
J. E. Cullens, Jr., T.A., La. Bar #23011
WALTERS, PAPILLION, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg One
Baton Rouge, LA 70810
Phone: (225) 236-3636
Facsimile: (225) 236-3650
Email: cullens@lawbr.net

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served, via electronic mail via the Court's CM/ECF system, to the following:

John M. Duck
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139

V. Thomas Clark, Jr.
Melissa M. Grand
450 Laurel Street, Suite 1900
Baton Rouge, Louisiana 70801

S. Gene Fendler
Shannon S. Holtzman
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099

on this 21st day of November, 2011.

s/J. E. Cullens, Jr.
_____
J.E. Cullens, Jr.